## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JAMES EUGENE FRAY,**                                    Case No. **05-63305-7**

Debtor.

## *MEMORANDUM OF DECISION*

At Butte in said District this 11th day of April, 2008.

In this Chapter 7 case a hearing was held after due notice at Missoula on April 3, 2008, on the Debtor James Eugene Fray's ("James") Motion for Contempt against his former spouse Yvonne Fray ("Yvonne"), filed March 7, 2008 (Docket No. 40) and for recovery of damages for violation of the automatic stay. Yvonne filed an opposition to Debtor's Motion and appeared and testified, represented by attorney Monte Jewell ("Jewell") of Missoula, Montana. James Fray appeared and testified, represented by attorney Gary W. Wolfe ("Wolfe") of Missoula, Montana. No exhibits were admitted[1].

At the conclusion of the parties' cases-in-chief the Court heard argument from counsel for both parties, after which the Court announced its preliminary finding that the evidence showed a violation of the stay, but the Court took the Motion for Contempt under advisement for further review. After further review of the record and applicable law, this matter is ready for decision. For the reasons set forth below Debtor's Motion for Contempt will be granted. Debtor's attorney shall

---

[1] Yvonne's Exhibits 1 and 2 were admitted at the hearing on the Trustee's motion to sell property, which Yvonne opposed but which was granted over her objection prior to the beginning of the hearing on Debtor's Motion for Contempt.

1

be granted 10 days in which to file an affidavit of attorney's fees and costs incurred in bringing

Debtor's Motion, and Yvonne and Jewell will be granted 10 days thereafter in which to respond

and request a hearing if they object to the reasonableness of Wolfe's request for attorney's fees and

costs. Afterward, the Court will enter Judgment against Yvonne and Jewell, who shall be jointly

and severally liable for Debtor's damages, allowed reasonable attorney's fees and costs, for willful

violation of the stay.

This Court has jurisdiction over this Chapter 7 case under 28 U.S.C. § 1334(a). Debtor's

Motion for Contempt for willful violations of the stay is a core proceeding under 28 U.S.C. §

157(b)(2). This Memorandum of Decision includes the Court's findings of fact and conclusions of

law as provided under F.R.B.P. 7052.

## FACTS[2]

Yvonne and James Fray were married until their marriage was dissolved in proceedings

initiated by Yvonne as petitioner in the Montana Fourth Judicial District Court, Missoula County,

Cause No. DR-02-332 (the "dissolution case"). They have two minor children. Yvonne was

represented by attorney Clare E. Anderson during the entire course of the marital dissolution.

Yvonne testified that James concealed marital assets in the dissolution case by conveying real

properties to his friends, who returned the properties to him after the dissolution case was

concluded.

Yvonne served extensive discovery requests on James during the dissolution case, and

---

[2]The background facts are not disputed. Several were the subject of testimony elicited at
the hearings on the Trustee's motion for sale of property and the Debtor's objection to Yvonne's
claim, both of which Yvonne opposed and appeared and testified on April 3, 2008, represented by
counsel. The Court refers to the record of the other hearings for purposes of undisputed
background.

testified that James failed to disclosure his properties in his answers to discovery.  However, because of what she described as the mounting costs of the litigation, and on the advice of counsel on August 4, 2004, Yvonne entered into a "Marital and Property Settlement Agreement[3] ("PSA") with James resolving the division of marital property and debts.  Paragraph 2 of the PSA provided for maintenance payments to Yvonne.  Paragraph 3 of the PSA, "Declaration of Disclosure", provides in pertinent part on page 3:  "The parties acknowledge that any deliberate failure to provide complete disclosure shall constitute a basis to set aside this agreement and any decree incorporating this agreement."  Yvonne testified that this provision of the PSA authorized her to reopen the divorce and set aside the PSA in the event assets were not disclosed.

A decree of dissolution was entered incorporating the PSA and the parties' marriage was dissolved in August 2004.  James testified that he had child support obligations in addition to his obligation to pay Yvonne maintenance.  Yvonne testified that she did not attempt to set aside the PSA and decree of dissolution prior to the commencement of Debtor's bankruptcy case.

James filed his voluntary Chapter 7 petition, Schedules and Statements on September 21, 2005.  He failed to list Yvonne or his two children on his Schedules or Statement of Financial Affairs.  The Notice of Commencement of case was mailed to creditors on September 24, 2005.

The Notice advises creditors in bold and enlarged print:  "Creditors may not take certain actions"; then states:  "[T]he filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property, and certain codebtors.  If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized."  On the second page of the Notice the second "Explanations" box from the top states:  "Creditors May

_____

[3]The property settlement agreement was admitted during the course of the hearing on the Trustee's motion to sell property as Ex. 2.

Not State Certain Actions" with the further explanation:

> Prohibited collection actions are listed in Bankruptcy Code § 362.  Common
> examples of prohibited actions include contacting the debtor by telephone, mail or
> otherwise to demand repayment; taking actions to collect money or obtain property
> from the debtor, repossessing the debtor's property; *starting or continuing lawsuits*
> or foreclosures; and garnishing or deducting from the debtor's wages.  [Emphasis
> added].

The above-described Notice was sent to creditors, but was not sent to Yvonne because
James did not include her in his creditor matrix or Schedule F.  The 11 U.S.C. § 341(a) meeting of
creditors was held October 18, 2005.  Yvonne learned about the Debtor's bankruptcy case in
October 2005, and she testified that she obtained a PACER account in her own name to monitor
the case and obtain documents.  However, she testified that she has never received the Notice of
Commencement of the case or the automatic stay, and was not aware that the stay was in place.

Yvonne testified that she told the Trustee that she knew the Debtor had assets which he
failed to disclose, and provided him with documents, and that the Trustee investigated.  On June
25, 2006, the Trustee initiated Adversary Proceeding No. 06-00090 against James and other parties
to recover fraudulent transfer of real properties, including a property commonly known as "911
Charlo", and to deny James' discharge under 11 U.S.C. § 727(a).  A mediation was conducted and
a stipulation was approved on September 13, 2007, settling the adversary proceeding.  The
settlement involved the sale of the 911 Charlo property, and that sale was finally approved at the
hearing held on April 3, 2008, by Order (Docket No. 62).  Yvonne testified that she kept abreast of
the adversary proceeding through her PACER account, and that in further discussions with the
Trustee's attorney it was "vaguely" suggested that she obtain bankruptcy counsel.  She consulted
with several attorneys who declined to represent her because she could not afford to pay them.
Finally, after meeting with Jewell who specializes in family law, he agreed to represent her on a

4

contingency fee basis.

Yvonne filed a proof of claim (No. 4) on November 7, 2007, which was disallowed after hearing by Order (Docket No. 63) when the Court found that her claim was duplicative of a claim for child support and maintenance filed by the Montana Department of Public Health and Human Services, Child Support Enforcement Division.

Yvonne testified that she filed the complaint in state district court on February 6, 2008, against the Debtor seeking to set aside the divorce decree. She admitted that she did not obtain relief from the stay before filing her complaint. Under questioning by the Court regarding the status of Yvonne's state court action, the record reflects nothing more than certain pretrial motions filed which are fully briefed. No scheduling order has been set.

Debtor's attorney Wolfe contacted Jewell to discuss the filing of Yvonne's state court complaint. Yvonne testified that she was aware of two letters Wolfe sent to Jewell discussing the case and the automatic stay, and that she read them. Under questioning by her counsel, Yvonne testified that she relied on his advice in proceeding with the state court complaint, and she agreed with Jewell's suggestion that any mistake is his and not hers. She testified that she wants to reopen the entire divorce case and request a jury trial to reallocate the marital assets, but she agreed that if the Court orders her to dismiss the state court action she will comply.

Debtor filed the Motion for Contempt on March 7, 2008. Jewell filed a response in opposition (Docket No. 43) contending that the stay did not apply because the state court complaint was brought to modify and enforce obligations which were part of a domestic action and as such are not stayed under 11 U.S.C. § 362(b)(2), citing *Allen v. Allen*, 275 F.3d 1160 (9th Cir. 2002). Yvonne argued that under Mont. Code Ann. § 40-4-253(4), "[t]he failure of a party to disclose and asset or liability on the final declaration of disclosure is presumed to be grounds for the court,

5

without taking into account the equitable division of the marital estate, to award the undisclosed asset to the opposing party . . . .;" and that under § 40-4-253(5) the state court may set aside all or part of the decree of dissolution if the court discovers that a party committed perjury in the final declaration of disclosure.  Yvonne objects to Debtor's Motion for Contempt on the grounds that he tricked her by not disclosing assets in their marital dissolution, that he is not protected by the stay and she is entitled to pursue relief in state court for his nondisclosure.

James testified that he incurred a $70 filing fee for the Motion for Contempt, and that he has incurred attorney fees in the course of preparing for and litigating his Motion.  James testified that he does not request punitive damages, but does want the state court action dismissed.

## DISCUSSION

### I.  Automatic Stay – § 362(a).

The Debtor's filing of his Chapter 7 bankruptcy petition on September 21, 2005[4], gave rise to an "automatic stay".  11 U.S.C. § 362(a).  The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.  *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986).  The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") explained the automatic stay in

*Balyeat Law Offices, P.C. v. Campbell*, 14 Mont. B.R. 132, 136-37 (9th Cir. BAP 1995):

---

[4]Debtor's petition was filed prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Publ. L. 109-8) ("BAPCPA"), October 5, 2005.

"Congress' intent in enacting § 362(a) is clear--it wanted to stop collection efforts for all antecedent debts." *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987) (*quoting In re M. Frenville Co., Inc.*, 744 F.2d 332, 334 (3rd Cir. 1984). *cert. denied*, 469 U.S. 1160 (1985). "Section 362(a) automatically stays a wide array of collection and enforcement proceedings." *Pennsylvania Dept. of Public Welfare v. Davenport*, 49 5 U.S. 552, 560 (1990). See also *Delpit v. C.I.R.*, 18 F.3d 768, 770 n.1 (9th Cir. 1994). "Section 362 is extremely broad in scope and should apply to almost any type of formal or informal action." *Id.* at 771 (*quoting 2 COLLIER ON BANKRUPTCY*, § 362.04 at 362-34 (15th ed. 1993). It "prohibits acts that, but for the stay, would be lawful." *In re Zartun*, 30 B.R. 543, 545 (9th Cir. BAP 1983). The stay is created for the benefit of the debtor, the debtor's property and the debtor's estate. *In re Casqul of Nevada, Inc.*, 22 B.R. 65, 66 (9th Cir. BAP 1982).

The Ninth Circuit has repeatedly reiterated the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002)[5]; *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).

Given the broad, self-executing, automatic stay described above, the Court finds that Yvonne violated the automatic stay by filing her state court proceeding to set aside the divorce decree and relitigate the division of marital property after the petition date, which as an action taken in violation of the automatic stay is void, not merely voidable. *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 175 (9th Cir. BAP 2005); *Gruntz*, 292 F.3d at 1082; *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1082 (9th Cir. 2003); *Schwartz v. United States*, 954 F.2d 569, 570-71, 575 (9th Cir.1992); *In re Deines*, 17 Mont. B.R. 114, 115 (Bankr. Mont. 1998); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d at 586. Yvonne's belated willingness to dismiss the state court action is appropriate, but inevitable in light

---

[5]At footnote 5 *Risner* quotes *Eskanos v. Adler* that: "Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions." 317 B.R at 835 n.5, quoting *Esklanos v. Adler*, 309 F.3d at 1215.

of the fact that the filing of the action was void *ab initio*. *Gruntz*, 292 F.3d at 1082.

Yvonne cites § 362(b)(2) in arguing that the stay does not apply to her state court action. Section 362(b) was amended by BAPCPA, but because this case was filed before the effective date of BAPCPA its amendments do not apply. The applicable version of § 362(b)(2) provides that the stay does not apply to "the commencement or proceeding of an action or proceeding for (i) the establishment of paternity; (ii) the establishment or modification of an order for alimony, maintenance, or support; or (B) of the collection of alimony, maintenance or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2). The Ninth Circuit in *Allen* noted that § 362(b)(2)(A)(ii) was added to the Bankruptcy Code in 1994 "to provide greater protection for alimony, maintenance, and support obligations owing to a spouse, . . . or child of a debtor in bankruptcy." 275 F.3d at 1163.

Yvonne's reliance on § 362(b)(2) and *Allen* is not persuasive. James' maintenance and child support obligations are nondischargeable and the subject of an allowed claim. Yvonne testified that she filed the state court action, with knowledge of James' bankruptcy and on the advice of counsel, to enforce the provisions of the PSA governing division of marital property because of his nondisclosure of assets. The property at 911 Charlo has been found to be property of the estate, and the plain language of § 362(b)(2) does not except from the stay actions related to the division or disclosure of marital property, but rather only to actions or proceedings for an order for alimony, maintenance or support. *Allen*, 275 F.3d at 1163.

A creditor who attempts collection of prepetition debt after it knows of the debtor's bankruptcy is subject to sanction for willful violation of the automatic stay. *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir.1996); *see In re Goodman*, 991 F.2d 613 (9th Cir.1993).

**II. § 362(h) – Willful Violation of the Stay.**

8

This Court construed 11 U.S.C. § 362(a) & (h[6]) in *In re Reece*, 15 Mont. B.R. 474, 477-78 (Bankr. D. Mont. 1996):

> As to the relevant Bankruptcy Code provisions, when a debtor files a bankruptcy petition, a stay is automatically imposed applicable against all creditor collection activity.  11 U.S.C. § 362(a).  The stay is effective upon the date of the filing of the petition; and does not depend on formal service of process.  *In re Smith*, 876 F.2d 524, 526 (6th Cir.1989).  Furthermore, the Code requires the creditor, pursuant to § 362(d), to take affirmative action to obtain relief from stay from a bankruptcy court.  In the absence of affirmative action on the part of the creditor to obtain relief from stay, § 362(a) prevents the creditor from attempting to enforce its rights against a debtor.  See *In re Sharon*, 200 B.R. 181, 187 (Bankr. S.D.Oh. 1996).

Turning to the law governing violation of the automatic stay, 11 U.S.C. § 362(h), this Court has held:

> To be actionable, a violation of the automatic stay must be "willful." In *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989), the term "willful", as used in § 362(h) was addressed and defined:   "This circuit has not defined 'willful' as it is used in subsection (h).  A useful definition, which we now adopt, was provided by the bankruptcy court for the district of the District of Columbia:  A 'willful violation' does not require a specific intent to violate the automatic stay.  Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.  Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded.  *Inslaw, Inc. v. United States* (*In re Inslaw, Inc.*,), 83 B.R. 89, 165 (Bankr.D.D.C.1988)."

*In re Christopherson,* 8 Mont. B.R. 213, 111 B.R. 920, 922 (Bankr. Mont. 1990). The Court further explained:

> "[T]he relief provided for willful violation of the stay under 11 U.S.C. § 362(h) is mandatory" since § 362(h) supplements but does not replace the pre-existing remedy of civil contempt.  *In re Lile*, 103 B.R. 830, 836 (Bankr.S.D.Tex.1989).  Thus, when a party acts with knowledge of a pending bankruptcy, a violation of the stay is

---

[6]BAPCPA changed the lettering and language of the statute governing willful violations of the stay to 11 U.S.C. § 362(k).  Because the instant case predates BAPCPA the Court will use § 362(h) in effect on the petition date.

considered willful and damages must be assessed, *Id*. at 836, for "[T]he creditor takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court." *Id*. at 837, citing *In re Clark*, 49 B.R. 704, 707 (Bankr.D.Guam 1985); and *In re Pody*, 42 B.R. 570, 573-574 (Bankr.N.D.Ala.1984). *Lile*, supra, at 841 further states that where a Debtor is forced to resort to the courts to enforce his right, attorney's fees should be awarded to the Debtor under § 362(h). See also, *In re Price*, 103 B.R. 989 (Bankr.N.D.Ill.1989).

*Id*. at 923.

The above test for willful violation under § 362(h), (1) that the creditor knew of the stay, and (2) the creditor's actions which violated the stay were intentional, was repeated in *Roman*, 283 B.R. 1, 8 (9th Cir. BAP 2002), which also noted the above standard that lack of specific intent to violate the stay is not a required element to find a willful violation, and that "it is clear that once a creditor or actor learns or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362(h)." *Risner*, 317 B.R. at 835; *Eskanos & Adler*, 309 F.3d at 1214-15. In *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003), the Ninth Circuit noted that § 362(h) provides for damages for willful violation of the stay upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were willful. *See Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995) (cited in *Roman*, 283 B.R. at 12-13). Further, a party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay. *Dyer*, 322 F.3d at 1191, *citing Pinckstaff v. United States*, 974 F.2d 113, 115 (9th Cir. 1992). Yvonne testified that she obtained a PACER account and monitored Fray's bankruptcy case, and received the petition. Therefore she is charged with knowledge of the automatic stay.

Yvonne also retained Jewell as counsel, and filed the state court action relying on his advice in willful violation of the stay. Yvonne testified that she was unable to retain a bankruptcy

10

attorney, and relied on Jewell's legal advice.  That is no defense.  A person who has consulted

with an attorney "can be charged with constructive knowledge of the law's requirements."

*Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987).  Yvonne

voluntarily selected Jewell as her attorney of record, and she cannot now avoid the consequences

of the acts or omissions of her freely-selected attorney.  *Pioneer Investment Services Co. v.*

*Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97, 113 S.Ct. 1489, 1499, 123

L.Ed.2d 74 (1993); *Link v. Wabash Co.*, 370 U.S. 626, 633-34 (1962).

Given Yvonne's knowledge of the bankruptcy case, and the longstanding case law on the

"automatic stay" cited above, Yvonne and Jewell should have refrained from any collection or

enforcement  efforts until she obtained clarification or relief from the stay from this Court.  *In re*

*Forty-Five Fifty-Five, Inc.*, 111 B.R. 920, 923 (Bankr. D. Mont. 1990), quoting *In re Lile*, 103

B.R. at 837.  Yvonne's responses and statements of counsel at trial suggest that she may seek relief

from the stay, but no motion for relief has been filed.  Instead she commenced the state court action

to set aside the PSA and decree of dissolution, and refused to dismiss the action even after

receiving notice of the violation of the stay in two letters from Wolfe.

The BAP in *Gurrola* explained the burden of proof in cases involving automatic stay

violations and discharge injunction violations:

> Lone Star's position is remarkably similar to that of the automatic stay
> violator we encountered in *Morris v. Peralta*, 317 B.R. 381, 389 (9th Cir. BAP
> 2004), who thought that he could safely quibble with a debtor about the automatic
> stay.  We held that debtors do not bear the burden of proving to creditors the
> existence of the automatic stay before stay-violation liability can be imposed.  *Id.*
> at 389.  The same basic analysis applies to the discharge and the discharge
> injunction.
>
> As with the § 362 automatic stay, the § 524(a) discharge and the discharge
> injunction are effective against the world to the full extent of their statutory terms,

11

regardless of notice.

*Gurrola*, 328 B.R. at 175.  Under the preceding language, Debtor did not have the burden of proving to Jewell and Yvonne the existence of the stay.  Even so Wolfe informed them explicitly of their violation of the stay in two letters, but they refused to dismiss the state court action notwithstanding his warning.

 *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 923 explains that "when a party acts with knowledge of a pending bankruptcy, a violation of the stay is considered willful and damages must be assessed."  *In re Lile*, 103 B.R. at 836.  An innocent stay violation can become willful if the creditor fails to remedy the violation after receiving notice of the stay.  *Del Mission Ltd.*, 98 F.3d at 1151;  *Abrams v. Southwest Leasing and Rental Inc. (In re Abrams)*, 127 B.R. 239, 241-44 (9th Cir. BAP 1991).  Yvonne's commencement of the state court action was intentional and with knowledge of the bankruptcy stay, and as such is a willful violation of the stay.  *Eskanos & Adler*, 309 F.3d at 1214-15; *In re Dyer*, 322 F.3d at 1191;  *Roman*, 283 B.R. at 8; *Risner*, 317 B.R. at 835; *Reece*,15 Mont. B.R. at 477-78.

 "The creditor takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court."  *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 923, quoting *In re Lile*, 103 B.R. at 837.  A party's violation of the stay may be willful even if a creditor believed itself justified in taking an action found to be violative of the automatic stay.  *In re Cinematronics, Inc.*, 111 B.R. 892, 900 (Bankr. S.D. Cal. 1990), the court wrote:

> The creditor takes a calculated risk where it undertakes to make its own determination of what the stay means.  *In re Gray*, 97 B.R. 930, 936 (Bankr. N.D. Ill. 1989).  To disagree with Theodore Roosevelt, at least when the automatic stay is concerned, it is far better to be a "timid soul" who seeks a court determination of the limits of the stay, rather than to fail "while daring greatly".

The BAP explained in *Campbell*, 14 Mont. B.R. at 149-50:

> Section 362(h) provides:
>
>> An individual injured by any willful violation of a
>> stay provided by this section shall recover actual
>> damages, including costs and attorneys' fees, and, in
>> appropriate circumstances, may recover
>> punitive damages.
>
>> "Whether the party believes in good faith that it had the right to
>> property is not relevant to whether the act was willful or whether
>> compensation must be awarded." [*In re Abrams*, 127 B.R. 239, 243
>> (9th Cir. BAP 1991)].  A willful violation of the stay occurs where
>> the party accused of such violation acts intentionally with the
>> knowledge that the automatic stay is in place.  Specific intent to
>> violate the stay is not required.  *Bloom*, 875 F.2d at 226.

*In re McMillan*, 18 Mont. B.R. 21, 29 (Bankr. D. Mont. 1999).

Under the above authority, § 362(h) permits a person injured by any willful violation to

recover actual and punitive damages.  *Eskanos & Adler*, 309 F.3d at 1215.  In addition to actual

damages, an award of attorney's fees and costs is mandatory upon finding a willful violation of the

stay under § 362(h).  *Dawson*, 283 B.R. at 9, 15; *In re Walsh*, 219 B.R. 873, 876 (9th Cir. BAP

1998).  The BAP noted that a debtor's attorney fees and costs are "actual damages" under § 362(h).

*Roman*, 283 B.R. at 10.  Having found willful violations of the stay by Yvonne by initiating the

state court action after the petition date, and after learning of the bankruptcy case and automatic

stay, Debtor is entitled to an award of his actual damages, which he testified consisted of his $70

filing fee, plus Debtor's reasonable attorney's fees and costs, which will be determined in future

proceedings set forth below.  Debtor has waived punitive damages.

The sanctions will be imposed against Yvonne and her attorney Jewell, who are deemed

jointly and severally liable for Yvonne's willful violations of the stay.  Jewell elicited testimony

from Yvonne that she relied on his advice in commencing and maintaining the state court action,

and that any mistake was his and not hers.  It is therefore appropriate that Jewell share liability for Yvonne's contempt.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 and 157.

2.  The pending Debtor's Motion for Contempt for violation of the stay is a core proceeding under 28 U.S.C. § 157(b).

3.  The Debtor satisfied his burden of proof by a preponderance of the evidence to show that Yvonne Fray's violation of the automatic stay was willful and that actual damages, attorney's fees and costs are appropriate as sanctions under 11 U.S.C. § 362(h), but not punitive damages.

4.  Yvonne Fray failed her burden to prevent stay violations and undo them.  *In re Roman*, 283 B.R. 1, 12 (9th Cir. BAP 2002).  Yvonne Fray and her attorney Monte Jewell are in contempt.

5.  Yvonne Fray's commencement of a state court action against James Fray in the Montana Fourth Judicial District Court, Missoula County, to reopen the action for dissolution of their marriage and reallocate marital assets, is void.

**IT IS ORDERED** a separate Order will be entered granting Debtor's Motion for Contempt against Yvonne Fray, filed March 7, 2008 (Docket No. 40); Debtor's attorney Gary W. Wolfe will be granted ten (10) days to file an affidavit of attorney's fees and costs incurred in relation to Debtor's Motion for Contempt[7], together with contemporaneous billing records; Yvonne Fray will

---

[7]The Court expects that Debtor's attorney will omit from his affidavit all attorney fees and costs not directly related to Debtor's Motion for Contempt.  This includes omitting any attorney time spent on preparation for or attending the other contested hearings held in this case on April 3, 2008.  The Court will closely scrutinize the billing records to ensure that attorney fees are limited to those allowed under § 362(h).

be granted 10 days thereafter in which to file any objections to the reasonableness of the fees and

costs requested and set the matter for hearing; and if no timely objections are filed the Court will

enter Judgment against Yvonne Fray and Monte Jewell, jointly and severally, without further

notice or hearing for willful violation of the automatic stay under 11 U.S.C. § 362(h) in conformity

with the above Memorandum of Law, including actual damages shown at trial on April 3, 2008,

plus Debtor's reasonable attorney's fees and costs.

    **IT IS FURTHER ORDERED** the Clerk shall send a copy of the Court's Order to the

Montana Fourth Judicial District Court, Missoula County, to the attention of the district judge

before whom Yvonne Fray's action to reopen her dissolution case is pending.

    BY THE COURT

    HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

15